# Bank of Montgomery et al. v. Ohio Buggy Co, et al.

*Bill in Equity to Enforce a Trust and to Compel an Accounting.*

1. *Debtor and creditor; composition agreement.*—Where creditors meet, on the invitation of their debtor, and agree to extend their claims, with a provision that they should be paid in four installments, and that the debtor should incur no new indebtedness pending the term of the extension, none of the assenting creditors can by legal steps, or by agreement, secure a preference over the other assenting creditors, at least until the debtor has committed a default.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed by the appellees against the appellants; and prayed to have certain property which had been conveyed to the defendants decreed to be held by them in trust, and an account to be taken. There was a decree of the chancellor overruling the demurrer of the defendants from which the present appeal is prosecuted.

On Feb. 8, 1892, The Montgomery Carriage Works, a partnership composed of three members, being unable to pay their creditors all of whom were simple contract creditors, addressed a circular letter to each one of them calling them together for the purpose of deciding what should be done for their benefit. In obedience to this call, most of the creditors, on February 17, 1892, met in the city of Montgomery; at said meeting The Montgomery Carriage Works' submitted a statement of their condition showing them to

be unable to meet their indebtedness, but declaring themselves willing to abide the judgment of their creditors, and at the same time requesting that they should be permitted to continue business "in order that they might pay their creditors in full and save something for themselves" out of their assets. Upon the submission of this statement a committee was appointed out of the creditors present to consider the situation and see what was best to be done under the circumstances. This committee, after investigation and consideration, made its report which contains the substance of the composition agreement entered into between the Montgomery Carriage Works and their creditors, and which was in the following language : "Your committee appointed to take under consideration the proposition of said debtors, and report thereon, do recommend that the proposition of said Montgomery Carriage Works be accepted, and an extension be granted said debtors as follows : Said Montgomery Carriage Works to execute and deliver to each of its creditors its notes for the amount due each creditor in four equal amounts, payable on or before the first day of January, 1893, July, 1893, January, 1894, July 1894, with interest at 6 per cent. payable annually, payable at Bank in Montgomery, Alabama. Said debtors to execute an agreement not to create any new indebtness until all of said notes are paid. Said debtors to reduce and keep their expenses at the lowest possible point, and to submit their books to the inspection of any of its creditors, or their duly appointed representative whenever requested. In the event said debtors create other or additional indebtedness, or fail to pay any of said notes when due, then and in such event all of the notes given in settlement as herein provided, shall immediately mature and become due and collectible. This report means that in case it is necessary, in the conduct of the business of the Montgomery Carriage Works to purchase goods, no more shall be purchased than are necessary, which goods shall be paid for in cash as soon as they are in their store and checked." The report of the committee was agreed to by the Montgomery Carriage Works and unanimously adopted by all the creditors present. In compliance with this report The Montgomery Carriage Works entered into an agreement in writing, pledging themselves to abide by its requirements, and this agreement was deposited with M. P. LeGrand, president of the Bank of Montgomery, who was one of the creditors. A communication was addressed by The Montgomery Carriage Works to each one of the creditors who were not present stating

to them what had been done at the meeting above referred to and asking that they agree thereto, which request was complied with.

The complainants in the present case were not present at this meeting of the creditors, but assented to the arrangement. On December 31, 1892, one day before the first notes, which were executed in accordance with the agreement, fell due, The Montgomery Carriage Works executed a bill of sale of substantially all of their property to a part of said creditors who had so agreed to said extension and entered into the composition arrangement, and who are made the defendants to the present bill. The consideration of this sale was the payment of certain debts due to the creditors of the Montgomery Carriage Works, "which said debts were in existence at the time of, and extended under the terms" of the arrangement entered into between all of the creditors of the Montgomery Carriage Works.

All the other facts are sufficiently stated in the opinion.

The prayer of the bill is that upon the final hearing, the chancellor will "render a decree declaring the property conveyed to said defendants, as aforesaid, to be a trust fund for the equal benefit of the creditors of the said The Montgomery Carriage Works, including orators, and that said defendants be held as trustees, and to hold said property in trust for the benefit of your orators, and the other creditors of the Montgomery Carriage Works. And that they be made to account for all the property included in said bill of sale and account for all of the proceeds of such as may have been sold by them with interest thereon." There was also a prayer for general relief.

The respondents demurred to the bill and assigned many grounds setting up in different ways the want of equity in said bill.

On the submission of the cause upon the demurrers, the chancellor overruled each ground of the demurrer.

STRINGFELLOW & LEGRAND and ARRINGTON & GRAHAM for the appellants.

BRICKELL, SEMPLE & GUNTER and T. SCOTT SAYRE for the appellees.

STONE, C. J.—The reporter will set out the substance of those parts of the agreement of extension, finally agreed upon between the Montgomery Carriage Works, a partnership composed of three members, and its creditors which is not
VOL. C.

made intelligible in this opinion. It bears date in February, 1892, and, it is averred, was agreed to by all the creditors of the company. Those who unite in filing this bill, although not of the number who participated actively in the meeting at which the agreement was entered into, were and still are creditors of the company, and they assented to, and accepted the terms agreed on. In the agreed terms of extension the company's debts were divided into four equal parts, to bear interest at six per cent.; the first instalment to mature January 1, 1893, and the remaining instalments at intervals of six months afterward; the interest to be paid annually. The last instalment to mature July 1, 1894. Notes to be executed for the several instalments, as per the agreed terms of extension. The Montgomery Carriage Works bound itself to contract no other debts pending the term of the extension.

The bill then avers that on December 31, 1892, the day preceding the maturity of the first installment of its extended indebtedness as agreed on, The Montgomery Carriage Works executed a bill of absolute sale of its entire property and effects to the Bank of Montgomery and certain other named creditors, each of whom had agreed to said terms of extension, in payment of its said debts to them, and thus stripped itself and the members composing the partnership of all means for the payment of its other debts. The debts due to complainants are wholly unpaid, and the Montgomery Carriage Works and its members are insolvent. The prayer of the bill is that the defendants, who thus received the effects of the Montgomery Carriage Works, be decreed to hold the same in trust for all the creditors alike, and be held to account for the effects so received to all the creditors *pro rata* who assented to the said extension; and there is a prayer for general relief. There was a demurrer to the bill assigning many grounds, all of which were overruled by the chancellor. From that ruling the present appeal is prosecuted.

Under the facts of this case if the averments of the bill be true, the agreement of February, 1892, between the Montgomery Carriage Works and its creditors has many of the controlling properties of a composition among creditors with their common debtor. Each made concessions. The creditors made liberal concessions in the matter of the time when their several demands should be due and collectible, and in the rate of interest to be paid. The debtor partnership bound itself to incur no new debts, until existing indebtedness should be paid off. Now, this was not simply an

agreement, or series of agreements, between each creditor and the debtor. It had a broader scope. True, it was, in its obvious extent, an agreement *bi-partite*, between the debtor on the one side, and the creditors on the other. It extends farther. By an irresistible implication it was an agreement among the assenting and acquiescing creditors to move as a unit and to share a common fate, at least until default should be made by the debtor. To hold otherwise would be to declare that the meeting of the creditors accomplished nothing, intended nothing.

In *White v. Kuntz*, 107 N. Y., 518—1 Amer. St. Rep. 886— the court, speaking of a composition by a debtor with creditors, said: Such an agreement, if entered into by a debtor with a number of his creditors. each acting on the faith of the engagement of the others, will be binding upon them, for each in that case has the undertaking of the rest as a consideration for his own undertaking. Where creditors thus mutually agree with each other, the beneficial consideration to each creditor is the engagement of the rest to forbear. In *Breck. v. Cole*, 4 Sand., (N. Y.) 79, speaking of a composition by a debtor with his creditors, the court said: "Every composition deed is in its spirit, if not in its terms, an agreement between the creditors themselves, as well as as between them and the debtor." In *Good v. Cheesman*, 2 Brn. & Ad. 328, an agreement of composition had been entered into between a debtor and his creditors, by which the debtor bound himself to pay two-thirds of his income, for the benefit of his creditors, the payments to be made to a trustee to be named by the creditors. They had failed to name the trustee. One of the creditors brought suit on his original demand, and the composition agreement was relied on in defense of the action. The court sustained the defense, holding, that the said agreement constituted a valid new contract between the creditors and the debtor, capable of being immediately enforced, and that the consideration to each creditor which made it binding on him was the forbearance of the other creditors. See also *Legard v. Hodges*, 1 Ves. jr. 477, where it was said by Lord Thurlow to be a universal maxim, "that wherever persons agree concerning any particular subject, that, in a court of equity, as against the party himself and any one claiming under him voluntarily, or with notice, raises a trust." Of course to make such agreement binding there must be a consideration; but mutual agreements to forbear on the part of the creditors, supplies the element of consideration as between them.

We hold that, at least until The Montgomery Carriage

[McCrossin v. Davis.]

Works committed a default, each assenting creditor was bound to take no legal step and to enter into no agreement, by which to secure to himself a preference or priority over other assenting creditors; and that the property and effects the defendants secured by the purchase of December 31, 1892, must inure to the equal, *pro rata* benefit of all the creditors who participated in the agreement, or assented to its terms. Of course, this opinion is pronounced on the postulate that the bill truly sets forth the transaction.

Affirmed.